UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | | |
|---|---|---|
| **HYLTON W. HANSON, JR.** | * | **CIVIL ACTION NO. 10-1323** |
| **VERSUS** | * | **JUDGE TOM STAGG** |
| **MICHAEL J. ASTRUE, COMMISSIONER, SOCIAL SECURITY ADMINISTRATION** | * | **MAG. JUDGE KAREN L. HAYES** |

### REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits. The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons assigned below, it is recommended that the decision of the Commissioner be **REVERSED and REMANDED for further proceedings.**

### Background & Procedural History

Hylton W. Hanson, Jr. protectively filed the instant applications for Title XVI Supplemental Security Income payments and Title II Disability Insurance Benefits on January 29 and March 1, 2004, respectively. *See* Tr. 69, 141-143, 693-695.[1] He alleged disability as of January 28, 2004,[2] because of nerve damage in his head and fibromyalgia. (Tr. 155-156). The claims were denied at the initial stage of the administrative process. (Tr. 64-65, 95-98, 696).

---

[1] Hanson filed previous applications for benefits in March 2003, which were denied initially, and not further appealed. *See* Tr. 69.

[2] Hanson later amended his alleged disability onset date to May 1, 2004. *See* Tr. 725, 737.

Thereafter, Hanson requested and received a September 14, 2005, hearing before an Administrative Law Judge ("ALJ"). *See* Tr. 69.[3] However, in an April 11, 2006, written decision, ALJ Thomas Bundy found that Hanson was not disabled under the Act. (Tr. 66-78). Accordingly, Hanson appealed the adverse decision to the Appeals Council. On November 29, 2006, the Appeals Council granted Hanson's request for review, vacated the ALJ's decision, and remanded the case for further proceedings. (Tr. 118-120).

Upon remand, a new hearing was held on April 19, 2007, before ALJ Bundy. (Tr. 723-733). In a June 25, 2007, written decision, ALJ Bundy again found that Hanson was not disabled during the relevant period. (Tr. 83-94).[4] On April 28, 2008, however, the Appeals Council again assumed jurisdiction, vacated the ALJ's decision, and remanded the case for further consideration by a new ALJ. (Tr. 132-135).

On August 7, 2008, ALJ Leslie Rodriguez held a third hearing in the matter. (Tr. 734-751). In a January 8, 2009, written decision, ALJ Rodriguez determined that Hanson was not disabled during the relevant period, finding at Step Five of the sequential evaluation process that he was able to make an adjustment to work that exists in substantial numbers in the national economy. (Tr. 28-44). Hanson again petitioned the Appeals Council to review the unfavorable

---

[3] The hearing transcript does not appear in the instant record.

[4] In his decision, the ALJ noted that on May 22, 2006, Hanson had filed new applications for Title II Disability Insurance Benefits and Title XVI Supplemental Security Income payments. *See* Tr. 87. In these applications, Hanson alleged disability as of April 12, 2006, (the day after the ALJ's decision denying his prior applications) as a result of fibromyalgia, Crohn's Disease, Reflex Sympathetic Dystrophy, headaches, lumbar spine impairment, degenerative disc disease, bilateral knee impairment, depression, and lower extremity edema. (Tr. 192-194). The applications were denied at the initial stage of the administrative process. (Tr. 82, 104-108). The ALJ concluded that the issues raised in these applications were the same as the issues contained in the 2004 applications; therefore, he deemed them duplicates. (Tr. 87).

decision. On June 22, 2010, however, the Appeals Council denied Hanson's request for review; thus the ALJ's latest decision became the final decision of the Commissioner. (Tr. 10-13).

On August 20, 2010, Hanson sought review before this court. He alleges the following errors:

(1) the ALJ erred by failing to find that his impairments medically equal a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(2) the ALJ's reasons for rejecting the assessments of plaintiff's treating physicians are not supported by substantial evidence; and

(3) the ALJ's credibility finding is not supported by substantial evidence.

## Standard of Review

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401. Substantial evidence lies somewhere between a scintilla and a preponderance. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

**Determination of Disability**

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability.  *See* 42 U.S.C. § 423(a)(1)(D).  The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work.  *See* 42 U.S.C. § 423(d)(2)(A).  Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA.  *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The steps are as follows,

> (1) An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.
>
> (2) An individual who does not have a "severe impairment" of the requisite duration will not be found disabled.
>
> (3)  An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.
>
> (4) If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.

>      (5)    If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

See *Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## Analysis

### I.     Steps One, Two, and Three

The ALJ determined at Step One of the sequential evaluation process that Hanson did not engage in substantial gainful activity during the relevant period. (Tr. 33). At Step Two, he found that he suffers from severe impairments of fibromyalgia, chronic headaches, chronic pain syndrome, opiate abuse, inflammatory bowel disease, lymphedema, obesity, and depression. *Id*. The ALJ concluded, however, that the impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at Step Three of the process. (Tr. 34-35).

Plaintiff contends that the ALJ failed to properly evaluate whether his physical impairments are medically equivalent to the listings for reconstructive surgery or for disorders of

the spine, i.e. 20 C.F.R. Subpart P, App. 1, Sections 1.03-1.04.[5] Indeed, although the instant ALJ discussed the severity of plaintiff's mental impairment in his Step Three analysis, he did not address how plaintiff's physical impairments failed to meet or medically equal a listed impairment.

---

[5] Under the regulations, an impairment(s) is medically equivalent to a listed impairment "if it is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404.1526(a). Medical equivalence may be established in three ways:

(1)    (i) If you have an impairment that is described in appendix 1, but--

        (A)    You do not exhibit one or more of the findings specified in the particular listing, or

        (B)    You exhibit all of the findings, but one or more of the findings is not as severe as specified in the particular listing,

(ii) We will find that your impairment is medically equivalent to that listing if you have other findings related to your impairment that are at least of equal medical significance to the required criteria.

(2)    If you have an impairment(s) that is not described in appendix 1, we will compare your findings with those for closely analogous listed impairments. If the findings related to your impairment(s) are at least of equal medical significance to those of a listed impairment, we will find that your impairment(s) is medically equivalent to the analogous listing.

(3)    If you have a combination of impairments, no one of which meets a listing (see § 404.1525(c)(3)), we will compare your findings with those for closely analogous listed impairments. If the findings related to your impairments are at least of equal medical significance to those of a listed impairment, we will find that your combination of impairments is medically equivalent to that listing.

20 C.F.R. § 404.1526(b).

When determining whether an impairment medically equals a listing, the Commissioner considers all relevant evidence in the record. 20 C.F.R. § 404.1526(c). The Commissioner also considers the opinion of one or more medical or psychological consultants who are engaged by the Commissioner to make medical judgments in Social Security matters. *Id.*

6

In *Audler v. Astrue*, the Fifth Circuit recognized that the ALJ is required to discuss the evidence and explain the basis for his findings at each unfavorable step of the sequential evaluation process. *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (citing 42 U.S.C. § 405(b)(1)). As here, an ALJ's bare conclusion that the claimant's impairments do not meet or equal a listing does not provide a basis for judicial review to assess whether the finding is supported by substantial evidence. *Id*. Even so, an ALJ's failure to adequately explain his Step Three determination does not require remand unless it affects the claimant's "substantial rights." *Id*.[6] A claimant's substantial rights are affected at Step Three when he demonstrates that he meets, or at least appears to meet, the requirements for a listing. *See Audler, supra*.

In this case, the ALJ determined in his residual functional capacity assessment that Hanson has to use a wheelchair for ambulation and crutches for balance while walking. (Tr. 35-36; *see also* discussion, *infra*).[7] These limitations recognized by the ALJ seemingly compel a finding that Hanson is unable to ambulate effectively, as contemplated under Listing 1.00.[8]

---

[6] *I.e.*, the error may be harmless. *Audler, supra*. (citing *Morris v. Bowen*, 864 F.2d 333, 334 (5th Cir. 2007)).

[7] On, or about May 16, 2008, Don Clark, M.D., a medical expert enlisted by the ALJ to assist him with the case, opined that plaintiff's impairments did not meet or equal an listing. (Tr. 624-645). However, this finding by Clark likely was influenced by Clark's opinion that Hanson did not need a cane to ambulate, *see* Tr. 648, – an opinion not adopted by the ALJ.

[8]     Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. . . .
20 C.F.R. Subpart P, App. 1, Section 1.00B(2)(b)(1).

Moreover, while Hanson may not have undergone reconstructive surgery of a major weight-bearing joint or suffer from a cognizable spinal disorder as contemplated by listings 1.03 and 1.04, the regulations emphasize that "*[r]egardless of the cause(s) of a musculoskeletal impairment, functional loss for purposes of these listings is defined as the inability to ambulate effectively on a sustained basis for any reason, including pain associated with the underlying musculoskeletal impairment . . .*" 20 C.F.R. Subpart P, App. 1, Section 1.00B(2)(a) (emphasis added). The regulations also provide that although lymphedema (one of plaintiff's severe impairments) does not meet the requirement of a listing, it may medically equal a cardiovascular listing or a musculoskeletal listing such as 1.02A or 1.03. 20 C.F.R. Subpart P, App. 1, Section 4.00G(4). Thus, again, the critical criterion for medical equivalence would be the inability to ambulate effectively – a criterion that plaintiff presumptively meets, according the ALJ's residual functional capacity assessment.

In sum, absent some creditable rationale from the ALJ to the contrary, plaintiff's impairments appear to medically equal at least one listing. In fact, ALJ Bundy remarked that "[i]f for the past two years, [the claimant] has been confined to a wheelchair for whatever reason, physical or mental or both, then — an award at Step 3 would be mandated." (Tr. 727-728). Under these circumstances, the ALJ's failure to adequately discuss the evidence and explain the basis for his Step Three finding is an error that affects plaintiff's "substantial rights" and requires remand. *See Audler, supra.*

## II. <u>Physical Residual Functional Capacity</u>

The ALJ determined that Hanson retained the residual functional capacity to perform

sedentary work,[9] reduced by the need to use a wheelchair for ambulation; the need to use crutches for balance while walking, but not for standing; and by moderate limitations in the ability to pay attention and concentrate for extended periods, where "moderate" is defined as having more than a slight limitation in an area but the individual is still able to function satisfactorily. (Tr. 35-36).

Plaintiff contends that the ALJ's residual functional capacity assessment is flawed, *inter alia*, because he failed to provide good cause for disregarding the limitations recognized by plaintiff's treating physicians. Having determined that this matter must be remanded on other grounds, however, the court need not reach this issue. Nonetheless, if, upon remand, this matter is not resolved at Step Three of the sequential evaluation process, the Commissioner, with the assistance of plaintiff's counsel, should endeavor to re-contact plaintiff's treating physicians to provide, clarify and/or update their medical source statements (including those treating physicians who did not provide source statements previously). The court notes that at least three of plaintiff's treating physicians apparently were concerned that he was abusing his pain medication. *See e.g.*, 401-403, 476, 482, 489, 504.

The court further observes that the record contains references to consultations or treatment by Dr. Edelman with regard to plaintiff's diagnosis for lymphedema. *See* Tr. 730. Dr. Edelman's file, however, does not appear in the instant record. Upon remand, the parties may obtain these missing records.

---

[9] Sedentary work entails:
> . . . lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. 404.1567(a).

**III.     Remand vs. Render**

Plaintiff urges the court to reverse with instructions to award benefits.  The courts have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. §405(g).  When reversal is warranted, the matter is remanded with instructions to make an award only if the record enables the court to conclusively determine that the claimant is entitled to benefits.  *See, Ferguson v. Heckler*, 750 F.2d 503, 505 (5th Cir. 1985); *see also*, *Rini v. Harris*, 615 F.2d 625, 627 (5th Cir.1980) (reversing and remanding with direction to enter judgment where the evidence was not substantial and the record clearly showed the claimant's right to benefits).

The court is not unsympathetic to plaintiff's concerns and understands his frustration with this case's prolonged trek through the adjudicative process.  Unfortunately, the court is not in a position to put the matter to rest.  Whether plaintiff's impairments medically equal a listing is a decision that ordinarily should be made (and properly explained) by the ALJ in the first instance. *See Audler, supra* (remanding the Commissioner's Step Three determination for further proceedings).

For the above-stated reasons,

**IT IS RECOMMENDED** that the Commissioner's decision be **REVERSED** and **REMANDED** pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings consistent herewith.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen  (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within

**fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED in chambers, at Monroe, Louisiana, this 30th day of December 2011.

_____
KAREN L. HAYES
U. S. MAGISTRATE JUDGE